UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESUS GUTIERREZ,

      Petitioner,

v.                                  CASE NO. 8:10-cv-853-T-23TGW

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

Gutierrez applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for second degree murder with a weapon, for which conviction Gutierrez serves twenty-five years in prison.   Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc. 14)  The respondent argues that some grounds are not fully exhausted and, as a consequence, are procedurally barred from federal review.  The respondent admits the application's timeliness. (Response at 4, Doc. 14)

## FACTS[1]

Gutierrez, the victim, and one of the witnesses were roommates.  Gutierrez and the victim were outside their trailer "drinking."  A neighbor testified that she observed

---

[1] This summary of the facts derives from Gutierrez's brief on direct appeal. (Respondent's Exhibit 2)

the victim insult Gutierrez and attempt to initiate a fist-fight with Gutierrez, who backed away until a friend of the victim intervened.  The neighbor testified that Gutierrez entered his trailer and upon his return to the scene, the victim started to again "throw punches" but never struck Gutierrez.  The victim started backing away with his hands raised when, as a third witness testified, Gutierrez hit the victim in the chest and, as Gutierrez pulled his hand back from the victim's chest, the witness saw something shiny like a knife in Gutierrez's hand.  The roommate heard a "turmoil" outside and, as he exited the trailer, he saw the victim bleeding and Gutierrez standing over the victim.  Gutierrez was both visually angry and verbally insulting the bleeding victim.  All three witnesses saw Gutierrez flee and leave the victim bleeding. The knife was found on the ground a few feet from the victim.

Two days later Gutierrez was found hiding in a trailer a couple of miles away. Blood stains on the shorts that Gutierrez was wearing matched the victim's blood. The medical examiner testified (1) that the victim had no defensive wound; (2) that the victim died from the loss of blood, which was caused by a knife wound to the chest; (3) that the victim's blood-alcohol level was 0.3, "a little less than half the legal limit for a DUI;" and (4) that additional damage at the entrance wound was caused by the base of the knife's handle and indicated that the entire blade of the knife was thrust into the body.  The wound penetrated the lung and injured a vein near the spine.

Gutierrez claimed that he acted in self-defense.  Gutierrez testified that he attempted to avoid the fight and told the victim to "calm down."  Gutierrez claimed that the victim both had a weapon and threatened to kill him.  In fear for his life, Gutierrez picked-up a knife, pointed the knife at the victim, and told the victim to "back off."  When the victim lunged at him, Gutierrez extended the knife toward the victim and stabbed him.  Gutierrez testified that he was scared and that he fled the scene because he was shocked at what had happened.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court. Under § 2254(d)(1), the writ may issue only if
> one of the following two conditions is satisfied--the state-court
> adjudication resulted in a decision that (1) "was contrary to . . .
> clearly established Federal Law, as determined by the Supreme
> Court of the United States" or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined
> by the Supreme Court of the United States." Under the "contrary
> to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court
> on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's
> case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693  (2002).  "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the state

court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___

U.S. ___, 131 S. Ct. 770, 786-87 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313

(11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the

state court decision that we are to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694.  A federal court must afford due deference to a state court's decision.  "AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1866 (2010).  *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Gutierrez's convictions and sentence.  (Respondent's Exhibit 4) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Gutierrez's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 12)  The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245,

1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, ___ F.3d ___, 2013 WL 4020264 at *8 (11th Cir. August 8, 2013) (explaining the difference between an "opinion" or "analysis" and a "decision" or "ruling" and confirming that the state court's "decision" or "ruling" warrants deference even absent an "opinion" or an "analysis").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398.  Gutierrez bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness

- 6 -

applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Gutierrez's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibits 7 and 8)

**DIRECT APPEAL CLAIMS OF**
**TRIAL COURT ERROR**

Gutierrez asserts error in the trial court's denial of his motion for a judgment of acquittal and in the trial court's denial of his motion that requested either a mistrial or a new trial.

**Ground One:**

Gutierrez argues that the trial court should have granted his motion for a judgment of acquittal because the state's evidence proved that the death was only a manslaughter and not a murder in the second degree. Gutierrez raised this issue on direct appeal as a claim of insufficiency of the evidence, but he raised the claim only as a violation of state law and not as a violation of federal law. Nevertheless, exhaustion is complete because, as *Mulnix v. Sec'y, Dep't of Corr.,* 254 Fed. App'x 763, 764-65 (11th Cir. 2007), explains, the state standard of review for a sufficiency-of-the-evidence claim is identical to the federal standard of review.

> Florida courts assess the sufficiency of the evidence used to convict criminal defendants under a legal standard identical to the one used by federal courts in deciding federal due process challenges to the sufficiency of the evidence.

> In this case, the state court analyzed [petitioner]'s due process
> sufficiency of the evidence claim using a standard identical to
> the one required under federal law.  Under these circumstances,
> we conclude [petitioner]'s federal claim has been exhausted.

A sufficiency-of-the-evidence claim is based on the Due Process Clause of the

Fourteenth Amendment, which prohibits a criminal conviction "except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime." *In re*

*Winship*, 397 U.S. 358, 364 (1970).  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979),

establishes the standard of review in a federal habeas corpus proceeding in which a

petitioner challenges the sufficiency of the evidence.

> We hold that in a challenge to a state criminal conviction
> brought under 28 U.S.C. § 2254 – if  the settled procedural
> prerequisites for the claim have otherwise been satisfied – the
> applicant is entitled to habeas corpus relief if it is found that
> upon the record evidence adduced at the trial no rational trier of
> fact could have found proof of guilt beyond a reasonable doubt.

The governing question is whether a rational trier of fact could have found proof

beyond a reasonable doubt and not whether the habeas court believes the evidence.

*Jackson v. Virginia*, 443 U.S. at 318-19 ("[T]his inquiry does not require a court to 'ask

itself whether *it* believes that the evidence at trial established guilt beyond a reasonable

doubt.'" (*quoting Woodby v. INS*, 385 U.S. 276, 282 (1966) (italics original)).

The trial court instructed the jury on the elements that the prosecution must

prove to support a conviction for murder in the second degree with a weapon

(Respondent's Exhibit 1, vol. IV at 404-07):

> In this case Jesus Gutierrez is charged with murder in the second
> degree with a weapon. Now, murder in the second degree

includes the lesser crime manslaughter, both of which are
unlawful. However, a killing that is excusable or was committed
by the use of justifiable deadly force is lawful. If you find that
Mr. Montes was killed by Mr. Gutierrez, you will then consider
the circumstances surrounding the killing in deciding whether
the killing was murder in the second degree or manslaughter or
whether the killing was excusable or whether it was justifiable.

. . . .

Murder in the second degree.  Before you can find Mr. Gutierrez
guilty of this offense, the state must prove each of these three
elements beyond a reasonable doubt:
First, Jose Lorenzo Montes-Moroyoqui is dead.
Second, that his death was caused by the criminal act of Mr.
Gutierrez.
And then, third, that there was an unlawful killing of Mr.
Montes by an act imminently dangerous to another and
demonstrating a depraved mind without regard for human life.

An "act" is defined as including a series of related actions arising
from and performed pursuant to a single design or purpose.

An act is one which is "imminently dangerous to another and
demonstrating a depraved mind" if it is an act or series of acts
that a person of ordinary judgment would know is reasonably
certain to kill or do great bodily injury to another, and is done
from ill will, hatred, spite or an evil intent, and is of such a
nature that the act itself indicates an indifference to human life.

In order to convict of second degree murder with a weapon, it is
not necessary for the state to prove the defendant had any intent
to cause death.

If you find that the defendant carried a weapon in the course of
committing the murder, you should find him guilty of second
degree murder with a weapon. But if you find that he carried no
weapon in the course of committing the murder but did commit
the murder, you should find him guilty of second degree murder.

The jury convicted Gutierrez of murder in the second degree with a weapon.

Gutierrez contends that the state failed to prove that the killing was the result of "ill

will, hatred, spite, or an evil intent." As a consequence, Gutierrez's claim requires

reviewing the jury's determination of the facts. *Wilcox v. Ford*, 813 F.2d 1140, 1143

(11th Cir.) (footnote and citations omitted), *cert. denied*, 484 U.S. 925 (1987), instructs

that a federal court, reviewing a state conviction in a habeas proceeding, must defer to

a jury's credibility determination in weighing conflicting evidence:

> The federal courts have consistently reiterated that this standard
> for weighing the constitutional sufficiency of the evidence is a
> limited one. It is not required that the evidence rule out every
> hypothesis except that of guilt beyond a reasonable doubt.
> Faced with a record of historical facts that supports conflicting
> inferences, we must presume that the jury resolved such conflicts
> in favor of the prosecution, deferring to the credibility of the
> evidence. The simple fact that the evidence gives some support
> to the defendant's theory of innocence does not warrant the
> grant of habeas relief.

*Accord Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001) ("Although each

element of the offense must be established beyond a reasonable doubt, . . . the State is

not required to rule out every hypothesis except that of the guilt of the defendant.")

(citations omitted), *cert. denied sub nom, Johnson v. Nagle*, 535 U.S. 926 (2002). In other

words, a federal court must defer to a jury's judgment in both assessing a witness's

credibility and weighing the evidence.

As stated above, the standard of review is whether a rational trier of fact could

have found proof beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. at

318-19. The evidence that the state presented and that the jury must have found

credible is (1) that Gutierrez retrieved a knife, which caused the victim start to retreat

with his hands up; (2) that Gutierrez plunged the knife into the victim's chest, which

injury caused the victim's death; and (3) that Gutierrez was both visibly angry and verbally insulting the bleeding victim. These are facts from which a rational juror could have found that Gutierrez acted with "ill will, hatred, spite, or an evil intent." As a consequence, ground one lacks merit.

**Ground Two:**

Gutierrez argues that the trial court should have granted his motion that requested either a mistrial or a new trial based on the prosecution's allegedly violating a discovery order. The basis for this claim is the prosecutor's asking a witness whether earlier she had told the prosecutor that she was afraid of the defendant. After an extensive hearing outside the presence of the jury, the trial court decided to deny the motion and give the jury a limiting instruction. Gutierrez appealed the trial court's denial of his motion. However, as the respondent argues, Gutierrez raised the issue solely as a matter of state law both at trial and on appeal and, as a consequence, the federal claim asserted in ground two is unexhausted.

An applicant must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971). *Accord Rose v. Lundy*, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus

giving those courts the first opportunity to review all claims of constitutional error."),

and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must

have fairly apprised the highest court of his state with the appropriate jurisdiction of

the federal rights which allegedly were violated."). Also, a petitioner must present to

the federal court the same claim presented to the state court. *Picard v. Connor*, 404

U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the

same claim he urges upon the federal courts.").  "Mere similarity of claims is

insufficient to exhaust." *Duncan v. Henry*, 513 U.S. at 366.

An applicant must alert the state court that he is raising a federal claim and not

just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the
> federal law basis for his claim in a state-court petition or brief,
> for example, by citing in conjunction with the claim the federal
> source of law on which he relies or a case deciding such a claim
> on federal grounds, or by simply labeling the claim "federal."

*Baldwin v. Reese*,  541 U.S. 27, 32 (2004).  As a consequence, "[i]t is not enough that

all the facts necessary to support the federal claim were before the state courts, or that

a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6

(1982).  *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004)

("The exhaustion doctrine requires a habeas applicant to do more than scatter some

makeshift needles in the haystack of the state court record.") (citations omitted).

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."); *Kennedy v. Herring*, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), *appeal after remand, Kennedy v. Hopper*, 156 F.3d 1143 (11th Cir.), *cert. denied sub nom Kennedy v. Haley*, 526 U.S. 1075 (1999). Gutierrez procedurally defaulted ground two by failing to present the federal aspect of the claim to the state courts.

To overcome procedural default, Gutierrez must establish either (1) "cause for the default and prejudice attributable thereto" or (2) "that failure to consider [the defaulted] claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989).

To demonstrate "cause" for his procedural default, Gutierrez must justify his failure to comply with Florida's procedural rules. In general, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that

some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." *Murray v. Carrier*, 477 U.S. at 488.  *See Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).  Even if he shows cause for his procedural default, Gutierrez must show prejudice arising from the alleged constitutional error.  A petitioner must show that he suffered actual prejudice, "not merely that the errors of the trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis original). *Accord Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991).  In essence, to show actual prejudice, Gutierrez must demonstrate that the alleged errors so infected the trial that his resulting conviction violates due process.  Gutierrez fails to meet his burden.

As an alternative to showing "cause and prejudice," Gutierrez must show that dismissal of his procedurally defaulted grounds will result in a "fundamental miscarriage of justice," an especial difficulty because Gutierrez must demonstrate "actual innocence" of the crime of conviction.  *See Smith v. Murray*, 477 U.S. 527, 537 (1986) (citing *Murray v. Carrier*, 477 U.S. at 496).  *See also Engle v. Isacc*, 456 U.S. 107, 134-35 (1982), and *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)[2] (denying a certificate of probable cause and holding that a petitioner must show "as a factual matter that he did not commit the crime of conviction.").  Additionally, to meet the

---

[2] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

"fundamental miscarriage of justice" exception, Gutierrez must show constitutional error coupled with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Gutierrez meets neither the "cause and prejudice" nor the "fundamental miscarriage of justice" exception to procedural default. Consequently, ground two is procedurally barred from review on the merits. However, Gutierrez's related claim of ineffective assistance of counsel is addressed in ground three.

## POST-CONVICTION CLAIMS OF
## INEFFECTIVE ASSISTANCE OF COUNSEL

Gutierrez asserts three claims of ineffective assistance of trial counsel, specifically that counsel failed to object to prosecutorial misconduct and move for a mistrial, that counsel failed to investigate and call an exculpatory witness, and that counsel failed to impeach a state's witness with an earlier inconsistent statement.

Gutierrez claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well
> settled and well documented. In *Strickland v. Washington*, 466

> U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme
> Court set forth a two-part test for analyzing ineffective assistance
> of counsel claims. According to *Strickland*, first, the defendant
> must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose result is
> reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Gutierrez must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Gutierrez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Gutierrez cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or

appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Gutierrez must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In summarily denying Gutierrez's motion for post-conviction relief, the state court specifically recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 7 at 2) Because the state court rejected the claims based on *Strickland*, Gutierrez cannot meet the "contrary to" test in Section 2254(d)(1). Gutierrez instead must show that the state court unreasonably applied

*Strickland* or unreasonably determined the facts.  In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).  The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

**<u>Ground Three</u>:**

Gutierrez alleges that trial counsel failed to object to prosecutorial misconduct and move for a mistrial regarding whether a witness was afraid of Gutierrez.  The basis for this claim is the same as the unexhausted and procedurally barred claim asserted in ground two, in which Gutierrez alleged trial court error.  In denying this claim of ineffective assistance of counsel, the post-conviction court's order thoroughly reviews the transcript of the testimony, the objection, and the extensive hearing that was conducted outside the presence of the jury.  (Respondent's Exhibit 7 at 3-15)  The post-conviction court determined that the record refutes Gutierrez's claim that counsel failed to object to the prosecutor's questioning.

> After reviewing the allegations, the court file, and the record, the Court finds that Defendant's counsel did make a motion for mistrial and made argument during his motion for new trial. Consequently, Defendant failed to establish counsel acted deficiently when the record reflects that counsel made a motion for mistrial and a motion for new trial based on the fact that the prosecutor made himself an unsworn witness, thereby preserving the issue for appellate review.

The post-conviction court rejected the claim asserted in ground three based on Gutierrez's failure to show that counsel acted deficiently.  The record supports the post-conviction court's determination that, contrary to Gutierrez's allegation, counsel objected and preserved the issue for appellate review.  Because Gutierrez cannot meet *Strickland*'s deficient performance requirement, no prejudice discussion is necessary. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").  Gutierrez is entitled to no relief on ground three.

**Ground Four:**

Gutierrez alleges that trial counsel failed to investigate and call an exculpatory witness who would have supported a claim of self-defense.  The post-conviction court conducted an evidentiary hearing and rejected this claim as follows (Respondent's Exhibit 8 at 1-3) (ellipses original) (citations to transcript omitted):

> Defendant alleges counsel failed to call Antonio Castaneda, who was available, and whose testimony would have demonstrated that the victim was armed, thus corroborating Defendant's theory of self-defense and refuting the State's evidence to the contrary. Defendant further alleges that had counsel investigated there is a reasonable probability that the outcome of the trial would have been different.
>
> At the June 5, 2008, evidentiary hearing, Defendant's trial counsel Mr. Kenneth Liftman testified the theory of defense at Defendant's trial was self-defense. He further testified that during his investigation of Defendant's case, he found that there were two statements that were taken from Mr. Castaneda by two different law enforcement officers. However,  he testified that in both statements, Mr. Castaneda stated that he was inside the

trailer when it happened, and that he . . . heard a noise, but did not see what happened.

He testified that he did not recall that he attempted to speak with Mr. Castaneda, but he knew he did not depose him. He further testified he did not believe he tried to bring Mr. Castaneda to testify as a defense witness. He also testified he did not attempt to have Mr. Castaneda testify as a defense witness because Mr. Castaneda told Detective Losat and Deputy Rodriguez that he was inside the trailer and heard yelling and, therefore, could not be in a position to see what happened. When asked if Mr. Castaneda's testimony would not have been helpful, he responded as follows:

> Yeah. What he said was, he was in the kitchen when the defendant came in the trailer, went to his room. He didn't see what happened, but he knows the defendant is a person who carries knives and keeps knives by his bed. So, yes, it could have been hurtful, obviously, if he testified. It would have strengthened the - - the implication that the defendant came in to arm himself with a knife and then went back outside again to confront Mr. Montes, yeah.

He further testified he actually took the time to consider Mr. Castaneda's statements as part of his preparation as evidenced by a typed summary of Mr. Castaneda's statement contained in [trial counsel]'s trial notebook.

After reviewing ground two, the testimony, evidence, and argument presented at the June 5, 2008, evidentiary hearing, the court file, and the record, the Court finds Defendant failed to present sufficient competent evidence to support his claim that Mr. Castaneda would have testified that the victim was armed. Moreover, the Court finds [trial counsel] considered Mr. Castaneda's statement and made a strategic decision not to have Mr. Castaneda testify at trial in light of the fact that Mr. Castaneda's testimony could potentially hurt Defendant. Therefore, Defendant failed to demonstrate how counsel's alleged deficient conduct resulted in prejudice. As such, no relief is warranted upon this claim.

The testimony from the evidentiary hearing supports the post-conviction court's determination that trial counsel investigated and considered using Mr. Castaneda as a defense witness.  However, for strategic reasons, trial counsel chose not to present Mr. Castaneda as a witness.

Trial counsel must decide which strategic and tactical option to pursue, such as deciding which witness or defense to present.  *See e.g., Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision [to not call a certain witness] appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"), *quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983), *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (*en banc*), and *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel.").  The state post-conviction court's decision is a reasonable application of *Strickland*, which holds that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Strickland*, 466 U.S. at 690-91.  Gutierrez is entitled to no relief on ground four.

- 22 -

**Ground Five:**

Gutierrez alleges that trial counsel failed to impeach a state's witness with an earlier inconsistent statement regarding whether the witness actually saw Gutierrez stab the victim. The post-conviction court conducted an evidentiary hearing and rejected this claim as follows (Respondent's Exhibit 8 at 3-5) (ellipses original) (citations to transcript omitted):

> Defendant alleges ineffective assistance of counsel due to counsel's failure to impeach the State's witness with prior inconsistent statements. Specifically, Defendant alleges Alfredo Cabral testified at trial that he did not witness the stabbing of Mr. Montes. Defendant alleges in his February 22, 2004, statement to HCSO Detective Frank Losat, Cabral stated that he momentarily turned his back during the fight, after which he observed the victim holding his bleeding chest. Defendant further alleges in his June 30, 2004, deposition, Cabral testified that he saw Defendant stab the victim. Defendant argues that Cabral's trial testimony, that he did not witness the stabbing of the victim, contradicts both his statements to Detective Losat and his deposition testimony. Defendant argues further that counsel should have impeached Cabral to elicit whether or not the victim had a weapon. Defendant alleges had counsel impeached Cabral, there is a reasonable probability that the outcome would have been different.
>
> At the evidentiary hearing, [trial counsel] testified he deposed Mr. Cabral on March 30, 2004. When asked if there was anything in the deposition that contradicted his trial testimony, [trial counsel] responded as follows:
>
> > His trial testimony was consistent with his deposition testimony that he saw - - at least circumstantially saw the stabbing: although, he didn't realize it was a stabbing until the victim was injured. He saw a punch, what he thought was a punch, thrown by Mr. Gutierrez and then realized after the fact that he had a knife and had stabbed Mr. Montes. There was nothing inconsistent

- 23 -

between with what he said at deposition and what he said at trial.

He further testified that had there been an inconsistent statement by Mr. Cabral that would have been beneficial to Defendant, he would have cross examined Mr. Cabral. However, he testified the defense was self-defense and the defense was conceding that Defendant had inflicted the fatal injury on the victim and, therefore, there was not an issue of fact. He further testified Mr. Cabral did not make any inconsistent statements which he could have used to impeach him.

A copy of Alfredo Cabral's deposition was admitted into evidence as State's exhibit #1. A copy of Detective Frank Losat's supplemental investigation report was admitted into evidence as State's exhibit #2.

After reviewing ground three, the testimony, evidence, and argument presented at the June 5, 2008, evidentiary hearing, the court file, and the record, the Court finds Mr. Cabral's trial testimony that he did not witness the stabbing of the victim was not inconsistent with his statements to Detective Losat and his deposition testimony. The Court further finds Defendant failed to present competent evidence to show that Mr. Cabral knew the victim had a weapon. Therefore, the Court finds Defendant failed to demonstrate that counsel acted deficiently in failing to impeach Mr. Cabral. Additionally, the Court finds Defendant failed to demonstrate that counsel's alleged deficient conduct resulted in prejudice. As such, no relief is warranted upon this claim.

The post-conviction court rejected this claim after determining that Gutierrez failed to prove either the deficient performance or the prejudice requirement under *Strickland*. Counsel's decision to cross-examine and his manner of cross-examining are strategic decisions entitled to deference. *Dorsey v. Chapman*, 262 F.3d 1181 (11th Cir. 2001), *cert. denied*, 535 U.S. 1000 (2002). The only question is whether counsel's strategic decision was "reasonable." *Minton v. Sec'y, Dep't of Corr.*, 271 Fed. App'x

916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (*quoting Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Gutierrez fails to show that the post-conviction court unreasonably applied *Strickland* by deferring to trial counsel's strategic decision.  Gutierrez is entitled to no relief on ground five.

To summarize, Gutierrez fails to meet his burden to show that the state court's decision was an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact.  As recently recognized in *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 15-16 (2013), this burden is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786–787, 178 L. Ed. 2d 624 (2011). "If this standard is difficult to meet" – and it is – "that is because it was meant to be." *Id.*, at ___, 131 S. Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at___, 131 S. Ct., at 786 (internal quotation marks omitted).

Accordingly, Gutierrez's application for the writ of habeas corpus (Doc. 1) is

**DENIED**.  The clerk must enter a judgment against Gutierrez and close this case.

**DENIAL OF BOTH**
**A CERTIFICATE OF APPEALABILITY**
**AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Gutierrez is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Gutierrez must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Gutierrez is entitled neither to a certificate of appealability nor to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Gutierrez must pay the full $505 appellate filing fee without installments unless the circuit court allows Gutierrez to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on March 31, 2014.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE